IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GLOBAL TUBING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | (Jury Trial Demanded) |
| TENARIS COILED TUBES, LLC and | ) | |
| TENARIS, S.A., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Global Tubing, LLC, by and through its attorneys, for its complaint, based on personal knowledge as to itself and its own actions and on information and belief as to all other persons and events, alleges as follows:

### NATURE OF THE ACTION

1. This action arises from false accusations in the oilfield services industry that were calculated to inflict unfair competitive harm on plaintiff, which has been forced to bring this suit for relief under the Lanham Act, the Patent Laws of the United States, state common law, and the Federal Declaratory Judgment Act.

2. In March 2017, plaintiff Global Tubing, LLC launched its DURACOIL™ product line into the industry. DURACOIL™ is an innovative coiled steel tubing product developed by plaintiff that competes with defendants' BlueCoil® product. Since plaintiff launched its new downhole product, defendants have pursued a campaign of false accusations against Global Tubing and its product, as well as misrepresentations about defendants' intellectual property.

3. Plaintiff brings this lawsuit to remove a cloud of confusion caused by defendants' conduct, as alleged in more detail below.

## PARTIES

4. Plaintiff Global Tubing, LLC ("Global Tubing") is a Delaware limited liability company with its principal place of business in Texas. It was formed in 2007 to meet a growing worldwide demand for coiled tubing products and services, particularly in the oil and gas industry. It is headquartered in Texas and has its primary manufacturing facility here. It has service facilities in Midland for the Permian Basin, outside Pittsburgh for the Marcellus and Utica shale plays, and outside Calgary for the Canadian oil and gas industry. It is a subsidiary of Forum Energy Technologies, a Delaware corporation with its principal place of business in this District at 920 Memorial City Way, Suite 1000, Houston, Texas 77024.

5. Defendant Tenaris Coiled Tubes, LLC ("Tenaris") is a Delaware limited liability company with its principal place of business in this District, at 8615 E. Sam Houston Pkwy. N., Houston, Texas 77044. It is a subsidiary of Tenaris S.A.

6. Defendant Tenaris S.A. is a publicly traded holding company incorporated and headquartered in Luxembourg. It acquired Precision Tube Technology, L.P. in 2002, which it renamed Tenaris Coiled Tubes, LLC.

## JURISDICTION AND VENUE

7. The court has subject matter jurisdiction over this action based upon 28 U.S.C. §1331 (federal question), 15 U.S.C. §1121(a) (Lanham Act), 28 U.S.C. §1338(a) (patents) and 28 U.S.C. §1367(a) (supplemental jurisdiction over related state claims).

8. The Court has declaratory judgment jurisdiction pursuant to 28 U.S.C. §2201. There is actual controversy between the parties as to whether DURACOIL™ products infringe U.S. Patent No. 9,803,256 (the '256 Patent).

9. This Court has personal jurisdiction over defendants. Their U.S. operations are based in Houston, in this District, and they have purposefully availed themselves of the privilege

of doing business within the State of Texas, and this District, and invoked the benefits and protections of its laws. They have conducted significant business in the State through the use, sale, and offer for sale of various products and technologies in Texas. Tenaris S.A. operates many of its subsidiaries out of Houston, including Tenaris and Tenaris Global Services Inc.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and 28 U.S.C. §1400. All parties regularly conduct business in the District, and a substantial part of the events and omissions giving rise to this action occurred in Houston.

**FACTUAL BACKGROUND**

**A. The Coiled Tubing Industry Is Closely Knit.**

11. Coiled tubing is essential in the oil and gas industry, particularly with the advent of the North American shale revolution resulting from the use of hydraulic fracturing or fracking. Coiled tubes are small-diameter steel pipes that are wound around large spools and measure in the thousands of feet. These durable yet relatively flexible pipes allow the delivery of various fluids downhole during drilling or workover operations, among other uses.

12. The coiled tubing industry is a small, close-knit community. Everybody knows everybody in this industry, and there are no more than fifty core, seasoned professionals in the business. For example, several Global Tubing employees previously employed by Tenaris have maintained relationships with Tenaris employees, including its Chief Technology Officer.

13. The U.S. marketplace for coiled tubing is highly competitive. Three companies have significant market share in the market: Global Tubing, Tenaris, and Quality Tubing.

14. In March 2015, Tenaris launched its BlueCoil® tubing product line. It claims that it uses a unique "quench and temper" manufacturing process that creates a product which offers better performance when compared to conventional coiled tubing.

15. Tenaris also alleges that BlueCoil® tubing embodies and practices Claim 1 of the '256 Patent. According to the inventor of this patent, BlueCoil® tubing should be "understood to be equivalent to the coiled tube in Claim 1."

16. Since its 2015 release, BlueCoil® tubing has become one of Tenaris's best-selling products and is responsible for growth in its share of the U.S. coiled tubing market. Without the product, Tenaris would have significantly less market share than it does today.

17. As the market for coiled tubing products is competitive, it is important to deliver innovative and reliable products to gain or maintain market share. But the industry competes on more than price and product quality. Because of the industry's close-knit nature, reputation, customer services, and ability to deliver products consistently and timely are significant factors in customer-purchasing decisions, more so than might be typical in other industries. In fact, BlueCoil® tubing and DURACOIL™ tubing are priced comparably.

18. These ancillary factors can drive customer purchasing decisions. For example, after Hurricane Harvey temporarily limited plaintiff's capacity to make DURACOIL™ tubing, some Global Tubing customers apparently ordered BlueCoil® tubing as a substitute. Likewise, many customers prefer DURACOIL™ tubing over BlueCoil® tubing due to superior customer service by Global Tubing.

**B.   Global Tubing Introduces New Competition.**

19. After introduction of BlueCoil® tubing, Global Tubing began to develop its own improved competitive product different from BlueCoil® tubing and what is claimed in the '256 Patent. Prior to DURACOIL™ tubing, BlueCoil® tubing was the only quench and temper product on the market, and only Global Tubing and Tenaris at present offer quench and temper coiled tubing.

20. Beginning in late 2015, plaintiff worked with various techniques and materials to independently develop and bring to market a competitive product. Its innovations resulted in the DURACOIL™ coiled tubing products and patent-pending HALO Induction Technology™, an new and improved quench and temper process for manufacturing coiled tubing. Use of HALO Induction Technology™ results in a product having a close to uniform microstructure along the length of the tube (99.9%), with some non-uniformity in the microstructure across the weld joints and heat affected zones.

21. HALO Induction Technology™ uses a one-step quench and temper process of manufacturing. By contrast, defendants' current manufacturing process has two steps. The one-step HALO Induction Technology™ process offers improved fatigue life, a more consistent microstructure, reduced susceptibility to abrasion and corrosion, and superior performance in high-pressure environments. In addition, the new one-step Global Tubing process allows it to deliver products more expeditiously and reliably.

22. In December 2016, Global Tubing began construction of an addition to its Texas plant to facilitate production of DURACOIL™ tubing.

23. In March 2017, at the primary industry trade show in Houston, Global Tubing publicly launched its DURACOIL™ products. Among other attendees, two Global Tubing employees – Messrs. Reichert and McClelland – were at this show.

24. Toward the end of the show, Mr. McClelland approached defendants' Chief Technology Officer, Mr. Reichert, and asked if he had seen Global Tubing's launch of its new DURACOIL™ products. Mr. Reichert said he had, but could not speak with the Global Tubing employee because, in his words, "I can tell you right now we're probably going to court."

25. At this same trade show, where nearly all of the coiled tubing customer base was in attendance, defendants represented to existing and prospective Global Tubing customers that DURACOIL™ tubing was a "copycat" of BlueCoil® tubing.

26. Despite defendants' accusations, the response from customers to the launch of the DURACOIL™ product line has been positive. DURACOIL™ tubing products have been in the field since July 2017, and customer feedback has been very positive. In short, plaintiff's new product line poses a serious threat to defendants' market share.

### C. Tenaris Continues a Campaign of False and Misleading Statements.

27. Faced with new competition from DURACOIL™ tubing, and rather than compete with improved products, pricing, or service, Tenaris continued to make false and misleading statements about Global Tubing, the DURACOIL™ product line, and defendants' intellectual property rights.

28. For example, in May or June 2017, one of defendants' customers had a meeting with Tenaris employee Mr. Urcola to discuss its dissatisfaction with Tenaris customer service. During the meeting, Mr. Urcola represented to the customer that Global Tubing "stole" the DURACOIL name from defendants and that DURACOIL was the "second choice" name (after BlueCoil®) for the Tenaris product.

29. Additionally, in August or September 2017, prior to issuance of the '256 Patent, defendants' Mr. Reichert represented to a coiled tubing sales representative that, in substance, Tenaris had a patent covering DURACOIL™ products. His false statement caused the sales rep to ask Global Tubing whether it owed Tenaris "royalties" for manufacture and sale of DURACOIL™ tubing products.

30. Defendants' false accusations that Global Tubing's DURACOIL™ tubing is a "copy" of defendants' BlueCoil® tubing are consistent with statements they also made to the U.S. Patent Office during prosecution of the '256 Patent.

31. In a March 2017 interview with Tenaris, the U.S. patent examiner took the position that certain arguments concerning the non-obviousness of the alleged invention required evidentiary support. Defendants responded on April 25, 2017 by submitting amendments to their pending claims, including a sworn declaration of Mr. Valdez, a Tenaris employee and named inventor of the '256 Patent. In accompanying remarks, defendants stated that Global Tubing has "begun copying the claimed coil steel tubes." In so arguing that the DURACOIL™ product line is evidence of "copying" Claim 1, defendants effectively asserted that DURACOIL™ products practice each limitation of the '256 Patent and are a "copy" of BlueCoil® products.

32. Mr. Valdez reinforced defendants' allegations of copying in his declaration. He states that Global Tubing "appears to have recognized and begun copying the critical features of the coiled tubes recited in Claim 1"; says that Global Tubing is "using an approach that follows the claimed coiled tubes"; and cites two Global Tubing brochures describing the DURACOIL™ tubing and its patent-pending HALO Induction Technology™ as evidence of alleged "copying."

**FIRST CAUSE OF ACTION**
**Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

33. Plaintiff realleges the preceding material facts.

34. The parties compete to sell coiled tubing products throughout the U.S. Since Global Tubing announced the launch of its DURACOIL™ product line, defendants have responded by injecting false statements about DURACOIL™ tubing and Global Tubing into the closely-knit coiled tubing marketplace.

35. Since the launch of DURACOIL™ tubing products, defendants reportedly have made false and disparaging statements about Global Tubing and its products to customers for whose business the parties compete.

36. In violation of Section 43(a) of the Lanham Act, these statements are material and false, likely to deceive the intended audience and influence purchasing decisions, and designed to confuse customers into believing that the Global Tubing DURACOIL™ products are knock-offs, copies, or merely equivalent to BlueCoil® products. In fact, DURACOIL™ products are not copies of BlueCoil® products, nor are the two equivalent. DURACOIL™ products are made using Global Tubing's patent-pending proprietary HALO Induction Technology™.

37. Tenaris also made false and misleading representations of fact to Global Tubing customers regarding defendants' patent rights and the nature, characteristics, and qualities of Global Tubing products, including implying that Global Tubing's coiled tubing infringe the '256 Patent, even though the '256 Patent had not been issued at the time. These statements were calculated to, and likely did, cause consumer confusion, mistake, and deception as to the nature and capabilities of DURACOIL™ products. The statements are material in that they relate to the inherent qualities and characteristics of DURACOIL™ products and are statements on which actual or potential customers routinely did, do, and will rely.

38. As a direct and proximate result of defendants' false statements about Global Tubing and its DURACOIL™ products, Global Tubing was or will be harmed in the market, including to its reputation and loss of business from prospective customers in an amount that, to the extent it can be calculated with reasonable certainty, will be determined at trial.

### SECOND CAUSE OF ACTION
**Business Disparagement**

39. Plaintiff realleges the preceding material facts.

40. Defendants' conduct constitutes business disparagement under Texas law. They have published false and disparaging information to Global Tubing's customer base about Global Tubing and its DURACOIL™ product line.

41. Their statements regarding Global Tubing and DURACOIL™ were made with malice, without privilege, and proximately caused Global Tubing actual damages in an amount that, to the extent it can be calculated with reasonable certainty, will be determined at trial.

### THIRD CAUSE OF ACTION
### Declaratory Judgment of Non-Infringement of U.S. Patent No. 9,803,256

42. Plaintiff realleges the preceding material facts.

43. The '256 Patent includes sixteen claims consisting of independent claim 1 and claims 2-16 dependent on claim 1. Accordingly, the limitations of claim 1 are included in, or incorporated into, all of the claims of the '256 Patent.

44. DURACOIL™ products do not infringe any claim in the '256 Patent.

45. Among other reasons, at least one of carbon, manganese, silicon, aluminum, sulfur, or phosphorus weight percentage of DURACOIL™ products falls outside of the weight percentage ranges required by all claims. DURACOIL™ products do not include a final microstructure that is homogeneous "across all base metal regions, weld joints, and heat affected zones," as required by all claims. DURACOIL™ products do not include a final microstructure that has a "uniform distribution of fine carbides across the base metal regions, the weld joints, and the heat affected zones," as required by all claims.

46. A substantial, immediate, and real controversy exists between the parties as to the infringement of the '256 Patent. Among other reasons, a controversy exists based upon BlueCoil® tubing's success in the marketplace, the substantial threat DURACOIL™ poses,

defendants' statements to Global Tubing customers, defendants' public allegations of copying BlueCoil® tubing, and defendants' threat of litigation.

47. Global Tubing has a reasonable apprehension that it will be sued by defendants seeking a judgment that Global Tubing's DURACOIL™ products infringe on one or more claims of the '256 Patent based on defendants' false statements and threat of filing suit against Global Tubing. Global Tubing did and will suffer reputational harm from customer confusion emanating from defendants' false representations that DURACOIL™ products are copies of or equivalent to BlueCoil® products and/or defendants' patented technology.

48. Pursuant to 28 U.S.C. §§2201-2202, a declaratory judgment is necessary to remove the cloud of uncertainty created by defendants and their statements and to confirm that Global Tubing did not and does not infringe, literally or under the doctrine of equivalents, directly, indirectly, or willfully, any claim of the '256 Patent.

49. Global Tubing requests that the Court enter an order declaring that the '256 Patent is not infringed by Global Tubing's DURACOIL™ products.

### DEMAND FOR JURY TRIAL

50. Pursuant to Federal Rule of Civil Procedure 38, Global Tubing demands a trial by jury of all issues triable of right by a jury.

### PRAYER FOR RELIEF

For these reasons, plaintiff Global Tubing respectfully prays that the Court:

a. Find that defendants have violated the Lanham Act and award to Global Tubing all appropriate relief, including damages, corrective advertising, and other injunctive relief;

b. Award Global Tubing all other appropriate injunctive relief and damages, as determined at trial;

c.  Declare that Global Tubing and its DURACOIL™ coiled tubing products do not infringe, literally or under the doctrine of equivalents, either directly, indirectly, or willfully, any claim of the '256 Patent;

d.  Award Global Tubing its reasonable attorney fees under 35 U.S.C. §1117(a) and/or 35 U.S.C. §285; and

e.  Award Global Tubing all other costs and further relief as is just and proper.

Dated: October 30, 2017

Of Counsel:

Robert J. McAughan, Jr.
SUTTON MCAUGHAN DEAVER PLLC
State Bar No. 00786096
bmcaughan@smd-iplaw.com
Three Riverway, Suite 900
Houston, Texas 77056
(713) 800-5700
(713) 800-5699 (Fax)

Respectfully submitted,

/s/ *Paul Yetter*
R. Paul Yetter
State Bar No. 22154200
Attorney in Charge
pyetter@yettercoleman.com
James E. Zucker
State Bar No. 24060876
jzucker@yettercoleman.com
Pamela L. Hohensee
State Bar No. 09812250
phohensee@yettercoleman.com
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)

ATTORNEYS FOR PLAINTIFF
GLOBAL TUBING, LLC