UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GLOBAL TUBING LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-3299 |
| | § | |
| TENARIS COILED TUBES LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM & ORDER

Plaintiff Global Tubing, LLC and Defendant Tenaris Coiled Tubes, LLC are competitors in the field of coiled tubing products for the oil and gas industry. Both recently brought new products to market, and Global Tubing contends that Tenaris concurrently engaged in a campaign of false advertising that violates the Lanham Act, 15 U.S.C. § 1125(a). Accordingly, it has brought a claim against Tenaris under the Act, and it also seeks a declaratory judgment that its product does not infringe a Tenaris patent, U.S. Patent No. 9,803,256 ("the '256 patent"). (Doc. No. 19.) Tenaris has now moved to dismiss. (Doc. No. 26.) Based on careful consideration of the parties' filings and the applicable law, the Court will deny the motion.

### I. BACKGROUND

The following is drawn from Global Tubing's First Amended Complaint (Doc. No. 19) and assumed to be true only for the purposes of resolving this motion. Global Tubing explains that coiled tubes are "small-diameter steel pipes" stretching thousands of feet that "allow the delivery of various fluids downhole during drilling or workover operations." (*Id.* at 3.) It says that three companies, itself and Tenaris included, dominate the "highly competitive" coiled

tubing marketplace in the U.S. (*Id.*) Global Tubing characterizes that market as "a small, close-knit community," in which "[e]verybody knows everybody." (*Id.*)

The products at issue here are Tenaris's BlueCoil®, launched in March 2015, and Global Tubing's DURACOIL™, launched in March 2017. (Doc. No. 19 at 3–5.) Global Tubing explains that both companies use a "'quench and temper' manufacturing process," though it is at pains to distinguish its approach, a "one-step" process, from Tenaris's two-step process. (*Id.* at 3–5.) Global Tubing provides various details about its product's unique features, but it notes that the two companies' products are directly competitive and substitutable for one another. (*Id.* at 4–6.)

Global Tubing contends that Tenaris has engaged in "a campaign of false and misleading statements" against Global Tubing. (Doc. No. 19 at 6.) It bases this contention on four sets of factual allegations.[1] The first concerns "the primary industry trade show in Houston" in March 2017, at which Global Tubing launched its DURACOIL product. (*Id.* at 5.) Near the end of the show, a Mr. McClelland, Global Tubing's Vice President of Technology and Product Development, asked a Mr. Reichert, Tenaris's Chief Technology Officer, whether he had seen Global Tubing's product launch. (*Id.*) According to Global Tubing, "Mr. Reichert said he had, but could not speak with the Global Tubing employee because, in his words, 'I can tell you right now we're probably going to court.'" (*Id.*)

Second, Global Tubing alleges that, at the trade show, Tenaris "represented to existing and prospective Global Tubing customers that DURACOIL™ tubing was a 'copycat' of

---

[1] In its Response to Tenaris's Motion to Dismiss, Global Tubing alluded to various developments since the filing of this lawsuit. (Doc. No. 27 at 9–10.) In its Reply, Tenaris objected, both because Global Tubing was thereby adding to the allegations in its complaint and because justiciability of Global Tubing's declaratory judgment claim—discussed at length below—must be determined at the outset of the lawsuit. (Doc. No. 30 at 2–4.) Agreeing with Tenaris, the Court confines its review of Global Tubing's allegations to those in its First Amended Complaint as they depict the state of affairs when this lawsuit was filed.

2

BlueCoil® tubing." (Doc. No. 19 at 5.) Global Tubing accords this great significance, because "nearly all of the coiled tubing customer base was in attendance" at the show." (*Id.*)

Third, Global Tubing alleges that a Tenaris employee, a Mr. Urcola, made a disparaging remark about Global Tubing to one of Tenaris's customers. (Doc. No. 19 at 6.) Urcola evidently met with the Tenaris customer in mid-2017, and he allegedly "represented to the customer that Global Tubing 'stole' the DURACOIL name" from Tenaris, which had devised "DURACOIL" as a possible name for the product that it eventually chose to name "BlueCoil". (*Id.*)

Fourth, the aforementioned Mr. Reichert, Tenaris's Chief Technology Officer, allegedly told a "coiled tubing sales representative"—not identified by name or employer—that Tenaris had a patent that covered DURACOIL. (Doc. No. 19 at 6.) This was false, according to Global Tubing, because Reichert made the statement in August or September 2017, and the '256 patent had not yet been issued. (*Id.*) The sales representative allegedly responded by asking Global Tubing if it would owe Tenaris royalties for DURACOIL. (*Id.*)

In addition to these various alleged false statements, Global Tubing says that Tenaris has accused Global Tubing of copying in filings to the U.S. Patent and Trademark Office. (Doc. No. 19 at 7.) In early 2017, Tenaris was working to obtain what would become the '256 patent. According to Global Tubing, the U.S. patent examiner had questioned the non-obviousness of Tenaris's claim and asked Tenaris to provide evidence. (*Id.*) This led Tenaris to submit the declaration of Martin Valdez, the Research and Development Manager in Tenaris's Materials Department.[2] (Doc. No. 20-2 at 2.) Valdez wrote that "it appears that competitors are attempting

---

[2] The parties dispute whether it is proper for the Court to consider the Valdez declaration in its entirety, rather than just those portions quoted in Global Tubing's First Amended Complaint. (Doc. No. 30 at 5–6; Doc. No. 33 at 1.) The Court can and will consider it. "Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the

3

to copy the claimed coiled tubes." (*Id.* at 3.) Later in the declaration, he was more specific: "the main competitor in the coiled tubing field, Global Tubing®, appears to have recognized and begun copying the critical features of the coiled tubes recited in Claim 1." (*Id.* at 7.) He included two DURACOIL brochures as appendices to the declaration. (*Id.*)

Global Tubing filed this lawsuit on October 30, 2017, bringing claims under Section 43(a) of the Lanham Act, for business disparagement under Texas law, and for a declaratory judgment that its product does not infringe Tenaris's '256 patent. (Doc. No. 1.) It drew a Motion to Dismiss from Tenaris. (Doc. No. 9.) That motion was withdrawn, however, after Global Tubing filed a First Amended Complaint that discarded the business disparagement claim. (Doc. No. 19.) Tenaris then filed a new Motion to Dismiss (Doc. No. 26), challenging the sufficiency of Global Tubing's Lanham Act claim and the justiciability of its declaratory judgment claim, to which the Court now turns.

## II. APPLICABLE LAW

### a. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) governs challenges to subject-

---

complaint. However, courts may also consider matters of which they may take judicial notice." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996). In securities fraud cases, the Fifth Circuit has approved taking judicial notice of the contents of submissions to the Securities and Exchange Commission. *Id.* The present circumstances are analogous. Moreover, "[a] court may consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint." *In re Plains All Amer. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583 (S.D. Tex. 2018) (quotation omitted). Global Tubing partially quoted the Valdez declaration in its complaint, making the entirety of the document permissible for consideration here.

4

matter jurisdiction. "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

b. **Rule 12(b)(6)**

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In turn, the Federal Rules permit a district court to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). The complaint must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. When ruling on a motion to dismiss, the court "construes facts in the light most favorable to the nonmoving party, as a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quotation omitted).

III. **ANALYSIS**

Tenaris argues that Global Tubing's declaratory judgment claim is not justiciable because there is no real or immediate controversy between the two companies on the issue of patent

infringement. (Doc. No. 26 at 17.) Tenaris also argues that Global Tubing fails to support its Lanham Act claim with adequate factual allegations. (*Id.* at 7–13.) The Court takes these in turn.

### a. Declaratory Judgment

Global Tubing's declaratory judgment claim relies on this Court's federal-question jurisdiction, 28 U.S.C. § 1331, because it calls for the Court to resolve the issue of patent infringement. The Court can reach that issue, however, only if Global Tubing has presented a justiciable case or controversy within the meaning of Article III.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). To present "a case of actual controversy," the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and it must be "real and substantial and admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotations omitted). That is, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quotation omitted).

"The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed." *Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 837 F.3d 1249, 1252 (Fed. Cir. 2016). "[J]urisdiction generally will not arise merely on the basis that a party learns of the existence of a

patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). That said, "Article III does not mandate that the declaratory judgment defendant have threatened litigation or otherwise taken action to enforce its rights before a justiciable controversy can arise." *Danisco U.S., Inc. v. Novozymes A/S*, 744 F.3d 1325, 1330 (Fed. Cir. 2014). An actual case or controversy can exist "even in situations in which there was no indication that the declaratory judgment defendant was preparing to enforce its legal rights." *Id.* "[It] will depend on the application of the principles of declaratory judgment jurisdiction to the facts and circumstances of each case." *SanDisk*, 480 F.3d at 1381.

The Court finds that, in their totality, the circumstances indicate a sufficiently substantial, real, and immediate controversy between Global Tubing and Tenaris. Tenaris represented to the Patent and Trademark Office that Global Tubing was copying the product for which it sought a patent. Tenaris now insists that the assertion in the Valdez declaration was not a full accusation of patent infringement. (Doc. No. 30 at 6–8.) At this stage, the Court must view the facts in the light most favorable to Global Tubing. In that light, Valdez's assertion that "competitors are attempting to copy the claimed coiled tubes" and Valdez's later specific naming of Global Tubing constitute an accusation that Global Tubing would be infringing Tenaris's patent once it issued. The Federal Circuit has found pre-issuance conduct to be relevant in determining the justiciability of a declaratory judgment action. *See Danisco*, 744 F.3d at 1328, 1331. The Court finds it relevant here too.

On its own, Tenaris's pre-issuance conduct might not be enough to make this a real and immediate controversy, but its alleged statements in the marketplace suffice to make it so. Tenaris told the two companies' overlapping customer base that Global Tubing had copied its

7

product; it told a customer sales representative the same, leading that representative to question whether Global Tubing would owe royalties to Tenaris; and it told a customer that Global Tubing had taken its product's name from Tenaris, an insinuation of copying.

Admittedly, Global Tubing's argument for justiciability is not the strongest that one will find in the case law. Other declaratory judgment plaintiffs have had extensive histories of patent litigation with their opponents. *See, e.g.*, *Danisco*, 744 F.3d at 1331; *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1355, 1358 (Fed. Cir. 2013). Global Tubing has shown no such history with Tenaris. Likewise, other declaratory judgment plaintiffs have relied on notices of infringement, threats of litigation, or other formal communications from their opponents. *See, e.g.*, *Asia Vital Components*, 837 F.3d at 1251; *SanDisk*, 480 F.3d at 1382. No such communication exists here.

The communication that comes closest to a threat—Reichert's purported statement to Global Tubing's McClelland that "I can tell you right now we're probably going to court"—is a statement on which this Court is loath to rely. The Federal Circuit has looked unfavorably on conduct by declaratory judgment plaintiffs that might seem calculated to instigate a controversy. *See Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1381 (Fed. Cir. 2010) (describing a plaintiff's phone calls to a defendant that began innocuously before turning provocative). As Global Tubing's own allegations indicate, McClelland initiated the exchange with Reichert a short time after Global Tubing held its product launch. Though the Court must view the facts favorably to Global Tubing, the resemblance to the disfavored conduct in *Innovative Therapies* makes the Court reticent to weigh Reichert's statement too heavily.

Though Global Tubing may not have the strongest case for justiciability, its case is stronger than others rejected by the Federal Circuit. Declaratory judgment plaintiffs have failed,

for instance, because the products from which they sought to clear the cloud of infringement were still far from being brought to market. *See, e.g.*, *Sandoz*, 773 F.3d at 1279–81. That problem is not present in this case, because all the asserted statements by Tenaris came at or after Global Tubing's public product launch. Also, declaratory judgment plaintiffs have failed when they could not establish that the defendant actually knew much about the plaintiff's product. That failing hurt the plaintiff in *Innovative Therapies*. 599 F.3d at 1380. By contrast, Global Tubing's allegations indicate that Tenaris knew about Global Tubing's product and had devoted at least some effort to studying it.

Acknowledging that this is a close question, the Court takes guidance from the Federal Circuit's observation that the purpose of the Declaratory Judgment Act is to "obviate," among other problems, "extra-judicial patent enforcement with scare-the-customer-and-run tactics." *SanDisk*, 480 F.3d at 1383 (quotation omitted). Global Tubing's allegations suggest something like those tactics was afoot here. Consequently, taking those allegations in the most favorable light, the Court finds that the controversy between the two companies is sufficiently real and immediate to render Global Tubing's declaratory judgment claim justiciable.

### b. Lanham Act

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014). A false advertising claim is directed against "[a]ny person who . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. §

1125(a)(1)(B). A false advertising claim requires showing, in the context of "commercial advertising or promotion," the following elements:

1) A false or misleading statement of fact about a product;
2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers;
3) The deception was material, in that it is likely to influence the consumer's purchasing decision;
4) The product is in interstate commerce; and
5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002).

The Court finds that Tenaris's various challenges to Global Tubing's false advertising claim are insufficient to defeat it at the Rule 12(b)(6) stage. First, Tenaris contends that the several statements it is alleged to have made did not occur in a "commercial advertising or promotion." (Doc. No. 26 at 7.) The Fifth Circuit has said that the terms "advertising" and "promotion" are given their "plain and ordinary meanings," but their scope reaches beyond "the classic advertising campaign." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 (5th Cir. 1996) (quotations omitted). To constitute "commercial advertising or promotion," the defendant's statements must be "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services," and they "(4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Id.* (quotation omitted).

The first three of these elements are not in serious question. Rather, the parties' dispute focuses on the fourth—whether Tenaris's alleged statements were disseminated sufficiently to the relevant purchasing public. The Fifth Circuit has said that "both the required level of

10

circulation and the relevant 'consuming' or 'purchasing' public addressed by the dissemination of false information will vary according to the specifics of the industry." *Seven-Up Co.*, 86 F.3d at 1385. Importantly, it added that "[w]here the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Act." *Id.* at 1386. As noted, Global Tubing has alleged that the coiled tubing industry is a "small, close-knit community" dominated by just three companies. Given that, the Court finds that Tenaris's alleged statements at the March 2017 trade show and Mr. Reichert's alleged statement to the unidentified sales representative sufficiently disseminated the claim that Global Tubing had copied Tenaris's product. Global Tubing's allegations hardly reach the level of specificity needed to withstand summary judgment or to prevail at trial, but they suffice to withstand dismissal here.

Second, Tenaris disputes that describing Global Tubing's product as a "copycat" amounts to a statement of fact, insisting that it is instead just "puffery." (Doc. No. 26 at 9–10.) A statement of fact is a statement "that (1) admits of being adjudged true or false in a way that (2) admits of empirical verification." *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 235 (5th Cir. 2014) (quotation omitted). By contrast, "non-actionable 'puffery' comes in at least two possible forms: (1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion." *Pizza Hut, Inc. v. Papa Johns Int'l*, 227 F.3d 489, 497 (5th Cir. 2000). For example, the slogan "Better Ingredients, Better Pizza," on its own, is just puffery. *Id.* at 498–99. *See also OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1011–12 (D. Ariz. 2017) (concluding the

same for the description of a light bulb's technology as a "genius idea" or as providing the "look and feel" of traditional light bulb).

Viewed in the light most favorable to Global Tubing, Tenaris's alleged statements are different. Made in relation to a high-technology product used by a high-dollar industry, the suggestion of "copying" could quite reasonably be interpreted as an insinuation of patent infringement.[3] That a third-party customer sales representative thought Global Tubing might owe royalties to Tenaris indicates as much. This context differentiates the present case from the most favorable example cited by Tenaris. *See Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1562–63 (S.D. Tex. 1996). In that case, which concerned a golf course that had recreated famous golf holes from other courses, the district court rejected the terms "copy," "replica," and "simulation" as too ambiguous to be statements of fact for Lanham Act purposes. *Id.* The court concluded that the terms were "susceptible to varying interpretations" and "could refer to varying degrees of similarity." *Id.* But the claim made here—that one company copied another's technology—is one resolved frequently through patent litigation. It is therefore more appropriate to view the statement as one admitting of falsification and verification, rather than as one amounting only to bluster or opinion.

Third, Tenaris argues that Global Tubing has not adequately pled injury or causation. (Doc. No. 26 at 12–13.) Indeed, Global Tubing's complaint says it has received "very positive" feedback from customers, whatever Tenaris's conduct may have been. (Doc. No. 19 at 6.) Global Tubing responds that the positive feedback to its product does not negate its other allegations. (Doc. No. 27 at 19.) It points to the allegations in its complaint that the coiled tubing marketplace

---

[3] To be clear, the Court is not considering Tenaris's statements to the Patent Office in evaluating Global Tubing's Lanham Act claim. Those statements, without more, cannot be deemed an aspect of Tenaris's "commercial advertising or promotion" and are thus beyond the scope of the Lanham Act.

is both "close-knit" and "highly competitive"; that BlueCoil and DURACOIL retail for similar prices; and thus that other factors, including reputation, determine success in the market. (*Id.*) In a suit for false advertising, "a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 134 S. Ct. at 1390. The plaintiff ordinarily must also show that its "economic or reputational injury flow[s] directly from the deception wrought by the defendant's advertising." *Id.* at 1391. Though general, Global Tubing's allegations sufficiently assert a plausible reputational injury from Tenaris's statements.

To avoid dismissal, a complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Global Tubing's Lanham Act claim clears that threshold.

## IV. CONCLUSION

The Motion to Dismiss filed by Defendant Tenaris Coiled Tubes, LLC challenges the justiciability of Plaintiff Global Tubing, LLC's declaratory judgment claim and the sufficiency of the factual allegations supporting Global Tubing's Lanham Act claim. Finding that both challenges fail, the Court hereby **DENIES** the Motion to Dismiss.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on the 20th day of July, 2018.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE