United States District Court
Southern District of Texas
**ENTERED**
June 23, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GLOBAL TUBING, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-3299 |
| | § | |
| **TENARIS COILED TUBES, LLC and** | § | |
| **TENARIS, S.A.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**MEMORANDUM & ORDER**

Before the Court are the claim construction briefs filed by both parties in this patent infringement suit. On June 10, 2020, the Court held a hearing, in accordance with *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), during which the parties presented argument in support of their proposed constructions. After considering the arguments of counsel, the evidence, and the applicable law, the Court finds that the disputed claims of the patents-in-suit should be construed as set forth herein.

**I.     BACKGROUND**

Defendant Tenaris Coiled Tubes, LLC is the owner of U.S. Patent No. 9,803,256 (the "'256 patent"), U.S. Patent No. 10,378,074 (the "'074 patent"), and U.S. Patent No. 10,378,075 (the "'075 patent"). Plaintiff Global Tubing, LLC brought suit against Defendant for, among others, declaratory judgment of non-infringement and unenforceability.

This patent dispute involves patents for coiled tubing, which are very long, small-diameter steel tubes that are used in the oil and gas industry to conduct and service wellbore operations. The

particular patents at issue provide for coiled tubing that is manufactured with a "quench and temper" process that makes the coiled tubing stronger and safer to meet the needs of shale oil extraction.

## II. APPLICABLE LAW

In patent law, "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citation omitted). Claim construction is a matter of law, and thus the task of determining the proper construction of the disputed terms lies with the district court. *Markman*, 417 U.S. at 385.

To determine the meaning of claims, courts begin by considering the intrinsic evidence, which includes the claims themselves, the specifications, and the prosecution history. *Phillips*, 415 F.3d at 1313. Courts look first to the language of the asserted claim itself. *Comark Commc'n, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). It is well established that words of a claim "are generally given their ordinary and customary meaning," which is defined as the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312–13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). A district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008); *see also Mentor H/S, Inc. v. Med. Device All., Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) (finding no error in the lower court's refusal to construe "irrigating" and "frictional heat"). The exceptions to the ordinary meaning rule are (1) when the patent applicant acts as his own lexicographer and explicitly defines the term, and (2) when the specification "reveal[s] an intentional disclaimer, or disavowal, of claim scope by the inventor." *Phillips*, 415 F.3d at 1315–

16.

Claims, however, "must be read in view of the specification of which they are a part." *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 979). The specification, which describes and illustrates the invention in detail, "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* (quoting *Vitronics*, 90 F.3d at 1582).

Courts may also consider the prosecution history, which provides evidence of how the Patent and Trademark Office (the "PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Still, a "patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006); *see Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009). A patentee could do so by, for instance, clearly characterizing the invention in a way to avoid prior art. *See, e.g.*, *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) (limiting the term "transmitting" to require direct transmission over a telephone line because the patentee was found to have disclaimed transmission over a packet-switched network by stating during prosecution that the invention transmits over a standard telephone line). However, "[w]here an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

In most circumstances, analysis of the intrinsic evidence alone will resolve claim

construction disputes. *Vitronics*, 90 F.3d at 1583. However, if the intrinsic evidence does not resolve ambiguities, a court may also consider extrinsic evidence such as expert witness testimony, dictionary definitions, and legal treatises. *Id.* at 1585. While extrinsic evidence "can shed useful light on the relevant art," it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004).

A patent is presumed to be valid. 35 U.S.C. § 282. A claim is invalid for indefiniteness if it "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2010). The party challenging the validity of a claim must prove indefiniteness by clear and convincing evidence. *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1366 (Fed. Cir. 2014); *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1036 (Fed. Cir. 2001); *WesternGeco LLC v. ION Geophysical Corp.*, 876 F. Supp. 2d 857, 871 (S.D. Tex. 2012).

### III. CONSTRUCTION OF AGREED TERMS

#### A. "bias weld joint[s]"

The parties agreed prior to the *Markman* hearing that the scope of this claim is the "microstructural region corresponding to the strip-to-strip joint that can be performed by Plasma Arc Welding ("PAW"), Friction Stir Welding ("FSW"), or any other welding techniques." The Court adopts this construction.

#### B. "heat affected zone[s]"

The parties agreed prior to the *Markman* hearing that the scope of this claim is "the portion of the base metal that has not been completely melted but whose microstructure or mechanical properties have been altered by the heat of welding." The Court adopts this construction.

    **C. "more than 90 volume % tempered martensite" / "at least 95 volume % tempered martensite"**

The parties agreed prior to the *Markman* hearing that this claim carries its plain and ordinary meaning. The Court adopts this construction.

    **D. "each of the plurality of welded strips comprising: a yield strength greater than about 80 ksi"**

At the *Markman* hearing, the parties agreed that this term carries its plain and ordinary meaning. The Court adopts this construction.

## IV. CONSTRUCTION OF DISPUTED TERMS

    **A. "improved yield strength and fatigue life at weld joints"**

As the Court held at the *Markman* hearing, and for the reasons stated on the record, the Court construes this term as "improved yield strength and fatigue life at weld joints as compared to conventional coiled tubing."

    **B. Weight Percent Terms**

As the Court held at the *Markman* hearing, and for the reasons stated on the record, the Court construes these terms as "about X – about X wt.%" or "up to about X wt. %."

    **C. "full body heat treatment applied to the coiled steel tube"**

As the Court held at the *Markman* hearing, and for the reasons stated on the record, the Court construes this term as "full body heat treatment composed of at least one austenitization and quenching cycle followed by a tempering treatment, applied uniformly to the coiled steel tube."

    **D. "homogenous"**

As the Court held at the *Markman* hearing, and for the reasons stated on the record, the Court construes this term as "homogeneous as compared to conventional coiled tubing."

### E. "uniform distribution of fine carbides"

As the Court held at the *Markman* hearing, and for the reasons stated on the record, the Court construes this term as "uniform distribution of fine carbides as compared to conventional coiled tubing."

### F. "a length of coiled steel tube"

As the Court held at the *Markman* hearing, and for the reasons stated on the record, the Court concludes that no construction is necessary as this claim term carries its plain and ordinary meaning.

## V. CONCLUSION

The disputed terms in the patents-in-suit are construed as set forth in this Order.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 22nd day of June, 2020.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE