UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GLOBAL TUBING, LLC, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | Case No. 4:17-CV-3299 |
| TENARIS COILED TUBES, LLC AND TENARIS, S.A., | § § § § | |
| *Defendants.* | § § § | |

# **ORDER**

Plaintiff Global Tubing, LLC's ("Plaintiff") moves for sanctions pursuant to Federal Rule of Civil Procedure 37, alleging that Defendants Tenaris Coiled Tubes, LLC's ("Tenaris") and Tenaris, S.A.'s (collectively, "Defendants") violated the prosecution bar contained in the Agreed Protective Order, ECF. 46 (the "Protective Order"). Mot., ECF No. 331.[1] Four years ago, the Court entered the Protective Order, barring any individual who receives highly confidential, attorneys' eyes only information from "prepar[ing], prosecut[ing], supervis[ing], or assist[ing] in the preparation or prosecution of any patent application pertaining to coiled steel tubing

---

[1] United States District Judge Keith Ellison, to whom this case is assigned, referred all pending and future discovery motions for disposition in accordance with 28 U.S.C. § 636(b)(1)(A). Order, ECF No. 247. On April 26, 2022, Judge Ellison referred this motion for disposition. Order, ECF No. 332. A motion for sanctions that seeks the award of fees and additional discovery is appropriate for ruling under 28 U.S.C. § 636(b)(1)(A).

1

or methods of heat treating coiled steel tubing . . . ." Protective Order § 6(G), ECF No. 46 at 6. Despite the bar on patent prosecution, Plaintiff claims that, Defendants' litigation counsel assisted Defendants' prosecution counsel in the prosecution of two patents related to coil steel tubing. Defendants oppose the motion, countering that there was no violation of the Protective Order, and that litigation counsel was walled off from the prosecution of the two patents. Defs.' Response, ECF No. 349. Having considered the argument of counsel, the parties' filings,[2] the supporting evidence, and the applicable law, the Court determines that Plaintiff's motion should be granted in part.

## I.   BACKGROUND

This is a patent infringement suit. Tenaris is the owner of U.S. Patent

---

[2] This motion engendered numerous responsive filings, including a response, reply, notice of subsequent events, sur-reply, notice of subsequent authority, and response to notice of subsequent authority. ECF Nos. 349, 350, 352, 353, 355, 384.

Defendants sought leave of this Court before filing its sur-reply. Mot., ECF No. 355. Defendants argue that Plaintiff's reply and notice of subsequent events raise new issues not previously raised in its motion. ECF No. 355 at 1. While "[a]rguments raised for the first time in a reply brief are generally waived," *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010), "granting leave to file a sur-reply in extraordinary circumstances on a showing of good cause is a viable alternative to the general practice to summarily deny or exclude all arguments and issues first raised in reply briefs." *Silo Rest. Inc. v. Allied Prop. & Cas. Ins. Co.*, 420 F. Supp. 3d 562, 571 (W.D. Tex. 2019) (quotation marks and citations omitted). The Court may grant motions for leave to file a sur-reply in the exercise of its sound discretion. *See RedHawk Holdings Corp. v. Schreiber Trustee of Schreiber Living Trust*, 836 F. App'x 232, 233 (5th Cir. 2020) (per curiam) ("The district court abused its discretion by granting Schreiber's motion . . . based exclusively on arguments and evidence presented for the first time in Schreiber's reply brief without allowing RedHawk to file a surreply."). Since discovery in this case is ongoing and Plaintiff has presented new evidence in its reply and notice of subsequent events that was only recently discovered, the Court grants Defendants' motion for leave to file a sur-reply in response to this new evidence.

No. 9,803,256 (the "'256 patent" or "main patent"), U.S. Patent No. 10,378,074 (the "'074 patent"), and U.S. Patent No. 10,378,075 (the "'075 patent") (collectively the '074 and '075 patents are referred to as the "Children Patents"). Plaintiff sued Defendants for, *inter alia*, declaratory judgment of inequitable conduct, non-infringement, and antitrust violations. Pl.'s Second Am. Compl., ECF No. 80. Tenaris has counterclaimed for infringement. Defs.' Am. Ans. and Counterclaims, ECF No. 119.

    This dispute involves patents for coiled tubing, which are very long, small diameter steel tubes that are used in the oil and gas industry to conduct and service wellbore operations. The patents at issue provide for coiled tubing that is manufactured with a "quench and temper" process that makes the coiled tubing stronger and safer to meet the needs of shale oil extraction. According to the parties, only three companies make this type of tubing: Tenaris, Global Tubing, and Quality Tubing/NOV. Plaintiff alleges that Defendants obtained their patents by deceiving the United States Patent & Trademark Office ("PTO"), withholding prior art, known as CYMAX, in prosecuting the main patent, and then altering and withholding a key piece of the prior art in prosecuting the Children Patents.[3] Pl.'s Second Am. Compl., ECF No. 80; Defs.' Third Am. Ans. and Counterclaims, ECF No. 119.

---

[3] For a timeline of CYMAX and Defendants' disclosure of CYMAX to the PTO, see the Court's opinion on Plaintiff's motions to compel, ECF Nos. 133, 136. Memo. & Order, ECF No. 222.

To facilitate the exchange of documents and information in this litigation, the Court entered an agreed protective order, at the parties' request. Protective Order, ECF No. 46. Relevant to this matter, the Protective Order included a patent prosecution bar. The prosecution bar states:

> [A]ny attorney for or representing a party, whether in-house or outside counsel, and any person associated with the party and permitted to receive Confidential or Attorneys' Eyes Only information pursuant to this Protective Order, who reviews or otherwise learns, in whole or in party, information designated by a party not represented by the attorney as Attorneys' Eyes Only information under this Order and disclosing detailed technical information directed, in whole or in part, to 1) the metallurgical composition of coiled steel tubing, 2) the microstructure of coiled steel tubing, and/or 3) a method of heat treatment of coiled steel tubing ("AEO Technical Information"), shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to coiled steel tubing or methods of heat treating coiled steel tubing) during the pending of this case and for two years after the conclusion of this litigation, including any appeals.

Protective Order § 6(G), ECF No. 46 at 6. The Protective Order provides that it "will be enforced by the sanctions set forth in Fed. R. Civ. P. 37(a) and any other sanctions as may be available to the presiding judge, including the power to hold parties or other violators of this Protective Order in contempt." *Id.* § 14, ECF No. 46 at 9.

Plaintiff filed this motion for Rule 37 sanctions, arguing that Defendants violated the prosecution bar in the Protective Order when litigation counsel Jayme Partridge ("Partridge") assisted the patent prosecutors in prosecuting the Children Patents. ECF No. 331. Plaintiff contends that Partridge helped coordinate the partial disclosure of the prior art to the PTO to get stronger claims issued in the Children

Patents. *Id.* Plaintiff requests an award of attorney's fees and the appointment of a special master. *Id.* Defendants counter that there could be no violation of the prosecution bar since Defendants' litigation counsel never shared Plaintiff's confidential information with prosecution counsel and Partridge's involvement in the decision of how to disclose the CYMAX documents to the PTO does not amount to assistance with patent prosecution. ECF No. 349.

**II.   THE LEGAL STANDARD FOR ENFORCEMENT OF PROTECTIVE ORDERS.**

The Protective Order provides that it "will be enforced by the sanctions in Fed. R. Civ. P. 37(a)." Protective Order § 14, ECF No. 46 at 9. Under Rule 37(a), a court may impose an award of reasonable expenses incurred in enforcing a protective order, including attorneys' fees, for a party's failure to abide by the protective order, but the court must not order this payment if the failure was substantially justified, or other circumstances make an award of fees unjust. FED R. CIV. P. 37(a). Moreover, this Court is "loath to resort to sanctions," *Quantlab Techs. Ltd. (BGI) v. Godlevsky*, No. 4:09-cv-4039, 2014 WL 651944, at *9 (S.D. Tex. Feb. 19, 2014), and "[t]he imposition of sanctions should only follow the violation of a clear order." *Damper Design, Inc. v. Cleveland Elec. Illuminating Co.*, 48 F.3d 1238, *2 (Fed. Cir. 1995) (table) (sanctions reversed against prosecuting attorney for misuse of violation of Protective Order in drafting patent application).

### III.     PLAINTIFF IS ENTITLED TO SANCTIONS.

Patent cases present several unique challenges. First, competitors engaged in litigation exchange commercially sensitive information in discovery. Second, sometimes, trial counsel also represents its client in prosecuting patent applications. Although protective orders typically include provisions specifying that designated confidential information may be used only for purposes of the current litigation, "even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise." *In re Deutsche Bank Trust, Co.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).

In the context of patent cases, prosecution bars are designed to address the issue that "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *Id.* (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980)); *see Ultra Premium Servs., LLC v. OFS Int'l, LLC*, No. 4:19-CV-2277, 2019 WL 5846900, at *1 (S.D. Tex. Nov. 7, 2019) ("Inclusion of a prosecution bar in a protective order may be necessary when 'even the most rigorous efforts of the recipient of [confidential] information to preserve confidentiality . . . may not prevent inadvertent compromise." (quoting *Deutsche Bank*, 605 F.3d at 1378)).

### A. The Prosecution Bar Prevents Litigation Counsel from Assisting in Any Patent Prosecution Activities.

"[T]o determine if conduct violates a protective order, courts focus on the terms of the order itself." *Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10-cv-02863-EJD, 2015 WL 3640626, at *3 (N.D. Cal. June 11, 2015). Plaintiff argues that the prosecution bar here created a wall between litigation counsel and all patent prosecution activities. ECF No. 331 at 18–19. Defendants contend that the prosecution bar was meant to prevent the misuse of Plaintiff's confidential information, not the use of documents or information already in Defendants' possession, and the Protective Order contemplated that litigation counsel would provide information to the patent prosecutors. ECF No. 349 at 8–11.

By its terms, the prosecution bar here prevents litigation counsel from "prepar[ing], prosecut[ing], supervis[ing], or assist[ing] in the preparation or prosecution of any patent application pertaining to coiled steel tubing or methods of heat treating coiled steel tubing . . . ." Protective Order § 6(G), ECF No. 46 at 6. Although Defendants contend that they must have divulged Plaintiff's confidential information to have violated the Protective Order, ECF No. 349 at 8–9, 28, the provision does not state that a breach of confidentiality must occur for a party to violate the prosecution bar. *See Zecotech Imaging Sys., PTE. Ltd. v. Saint-Gobain Ceramics & Plastics Inc.*, No. 5:12CV1533, 2014 WL 12597839, at *5 (N.D. Ohio May 23, 2014) (finding that violation of prosecution bar did not require that

confidential information be divulged). Moreover, although Defendants argue that drafting and amending claims during prosecution is where the risk of misuse of detailed technical information is most likely to occur, ECF No. 349 at 9, the prosecution bar does not include a definition of patent prosecution or a list of prohibited activities that limits the scope of the prosecution bar to drafting and amending patent claims. *See, e.g.*, *Encap, LLC v. Scotts Co.*, No. 11-C-685, 2014 WL 6386965, at *1 (E.D. Wis. Nov. 14, 2014) (prosecution bar included list of preparation and prosecution activities excluded by the bar). Instead, patent prosecution begins when the inventor, its agent, or its attorney files an application with the PTO and includes any activities in advancing that application. *See, e.g.*, *id.* at *3 (finding that litigation counsel's participation in a PTO examiner interview, even for the purpose of gathering evidence for a reconsideration motion, is involvement in the prosecution of a patent).

Further, in this case, the same law firm represents Defendants as both litigation counsel and patent prosecutors. The Federal Circuit in *Deutsche Bank* recognized that the concern underlying prosecution bars manifests itself when trial counsel also represents its client in prosecuting patent applications before the PTO. 605 F.3d at 1379. In this circumstance, it is difficult for a court to conclude that a trial attorney who subsequently assists with patent prosecution was able to strictly exclude any information he or she learned regarding the opposing party's

confidential information through discovery during the prosecution of the client's patents. Based on the broad nature of the prosecution bar here— barring litigation counsel from assisting in the preparation or prosecution of "any patent application pertaining to coiled steel tubing or methods of heat treating coiled steel tubing"— it appears that the parties specifically considered compartmentalization of information once learned difficult, if not impossible. *See Par Sys., Inc. v. iPhoton Sols., LLC*, No. 4:10-CV-393-Y, 2012 WL 12885085, at *3 (N.D. Tex. Apr. 17, 2008) (broad prosecution bar).

The Court finds that the express terms of the prosecution bar prohibited litigation counsel from assisting in any patent prosecution activities related to coiled steel tubing.

### B. Defendants' Litigation Counsel Impermissibly Assisted Prosecution Counsel with Prosecution of the Children Patents.

Plaintiff argues that Defendants violated the prosecution bar when litigation counsel assisted in the prosecution of the Children Patents. ECF No. 331 at 8–13. Specifically, Plaintiff contends that Partridge was involved in the partial disclosure of prior art to the PTO to get stronger claims issued in the Children Patents. *Id.* at 20–21. Defendants counter that the patent prosecutors, not the litigators, decided when and how to disclose the CYMAX documents to the PTO, and Partridge only agreed to a course of action that the prosecutors had already chosen. ECF No. 349 at 13–23.

Although Defendants contend that Plaintiff mischaracterizes the events, ECF No. 349 at 15–18, the essential facts at issue are undisputed, as follows:

Beginning in late 2018, Defendants' outside litigation counsel ("litigation counsel") began to receive Plaintiff's confidential discovery, bringing the prosecution bar into effect. ECF No. 331 at 8. Following review of the CYMAX materials in December 2018, Defendants' outside prosecution counsel ("prosecutors") researched whether CYMAX had been publicly disclosed. ECF Nos. 331-5, 331-6, 331-7, 331-9, 349-11, 349-12, 349-17. On January 31, 2019, Defendants asked outside counsel about their obligation to disclose the CYMAX documents. ECF No. 331-10. In February 2019, litigation counsel prepared a memo on the duty to disclose, which the prosecutors edited before it was sent to Defendants, concluding that it was "likely" that the CYMAX documents "were at least disclosed to CYMAX's customers." ECF Nos. 331-11, 331-12, 331-13, 331-14, 349-16.

In March 2019, Defendants' in house Legal Director informed the Tenaris decision-makers that to challenge Plaintiff's patent, they would need to obtain the Children Patents and to do so would require disclosure of the CYMAX documents. ECF Nos. 331-17, 331-18. In April 2019, Defendants' prosecution counsel strategized on when and how to disclose the CYMAX documents to the PTO. Among the email threads discussing strategy, a Tenaris member of the team wrote

to the prosecutors that he had an "interesting discussion" about the CYMAX documents with Partridge who "[would] talk to [Musselman] about it." ECF No. 331-21. Three days later, Partridge met with Musselman during which they discussed whether to disclose CYMAX and its proprietary specifications. ECF No. 331-22. On April 16, one of the prosecution counsel, Russell Rippamonti, wrote to the client contact, "I believe Wes [Musselman], Jayme [Partridge], and I agree that pages we have numbered as 27-31 dealing with the metal composition . . . would have been considered confidential and not disclosed. I believe we also agree that the other CYMAX documents should be disclosed in an [Information Disclosure Statement ("IDS")] for the [Children Patents] and in the litigation." ECF No. 331-23. On April 18, Partridge "agree[d] with the assessment and proposed IDS," which included the plan not to disclose pages 27-31, which contained the chemical specification of CYMAX. ECF Nos. 331-24, 349-20.

Defendants contend that, in these April 2019 discussions, prosecution counsel provided the disclosure strategy and Partridge's inquiries related to arguments for post-grant proceedings, which are excluded from the prosecution bar, and clarifications of what the prosecutors intended to do. ECF No. 349 at 16. Defendants further argue that prosecution counsel reached their own conclusion about which portions of CYMAX to disclose and how to disclose them to the PTO, without Partridge's input, and that Partridge did not provide any edits to the IDS. ECF

11

No. 349 at 18; *see* Partridge Decl. ¶ 14, ECF No. 349-24 at 6.

While Defendants are correct that the evidence does not support a finding that Partridge drafted or provided edits to the contents of the IDS, the evidence shows unequivocally that she discussed with the client and prosecution counsel separately, and then agreed with prosecution counsel, about what should be disclosed to the PTO in the IDS, specifically what parts of the CYMAX documents should be disclosed. In particular, Partridge agreed with the exclusion of the chemical specification pages of the CYMAX materials, which this Court found to be a continuation of the fraud on the PTO. R&R, ECF No. 222 at 23-24.[4]

Even if prosecution counsel drafted the IDS submissions relating to CYMAX, Partridge's agreement with the disclosure strategy constitutes assistance in patent prosecution. Defendants argue, however, that this changes the meaning of "assist"

---

[4] The Court also notes that various discussions in this collection of documents show that arguments Defendants made in opposition to the imposition of sanctions under the crime fraud doctrine were contrary to the facts. For example, Defendants argued that CYMAX was cumulative of the Chitwood article they submitted to the PTO and the patent examiners would have known the chemistries based on the steel disclosed in the Chitwood article. ECF Nos. 144 at 18, 155 at 13. However, the discussion in the email shows that Chitwood, which did not disclose its chemistry (low carbon 4100 steel), had a different chemistry from CYMAX (modified version of 4100 steel) and CYMAX was more detailed. ECF No. 331-15 at 2. Similarly, Defendants argued that they failed to disclose CYMAX to the PTO when prosecuting the '256 patent because they thought the CYMAX documents were confidential and not in the public arena. ECF No. 144 at 21-22. The emails show that, in January 2019, during the prosecution of the Children Patents, Defendants investigated and concluded that the CYMAX brochure was provided to customers, and at least part of it was published. *E.g.*, ECF No. 331-9 at 2, 331-12 at 3, 331-14 at 9 & 13. There is no explanation as to whether a similar investigation was done at the time of the '256 patent, or why it was not. But the same information was available, particularly since Mr. Reichert, one of the inventors, thought the CYMAX brochure was part of a sales package for customers. ECF No. 331-9 at 2. The Court finds these discrepancies to be troubling.

in the Protective Order to "acknowledge." ECF No. 349 at 24. As explained in the previous section, the prosecution bar prevented litigation counsel from assisting in any patent prosecution activities, including IDS submissions to the PTO. *See* § III(A). Defendants define "assistance in patent prosecution" to include "assistance with drafting or preparing Patent Office submissions, including claim amendments, participating in communications with the Patent Office, and maintaining the prosecution file." Clonts Decl. ¶ 13, ECF No. 349-25 at 5–6. That is what litigation counsel did here. Despite Partridge's contention that she does not believe that her agreement amounted to "assistance," Partridge Decl. ¶ 14, ECF No. 349-24 at 6, and Defendants' contention that the Court should not impose sanctions for violation of an order that is not clear, ECF No. 349 at 24, Partridge did not "acknowledge" the prosecutors' IDS submissions, but rather assisted in the preparation of the IDS submissions. When she discussed the CYMAX documents with the client and the prosecutors, including what parts were proprietary and should be excluded, and expressed her agreement with the prosecutors about what to include in the submission to the PTO, she assisted in patent prosecution.

Nevertheless, Partridge declares that she did not use any knowledge of Plaintiff's confidential information when agreeing with the prosecutors' strategy. Partridge Decl. ¶ 7, ECF No. 349-24 at 4. Although the prosecution bar does not require there to have been a breach of confidentiality, since it is difficult for the

13

human mind to compartmentalize and selectively suppress information once learned, the Court cannot conclude that counsel was necessarily able to exclude all information she learned regarding Plaintiff's confidential information through discovery during the CYMAX disclosure discussions or when she expressed her agreement with the prosecutors' strategy. *See Par Sys.*, 2012 WL 12885085, at *3 (finding that defendants' unintentional violations of prosecution bar do not lead to the conclusion that counsel was able to strictly exclude any information he learned during discovery as litigation counsel from his actions in prosecuting patent applications); *see also Silicon Graphics, Inc. v. ATI Techs., Inc.*, No. 06-C-611-C, 2007 WL 5433478, at *3 (W.D. Wis. Aug. 8, 2007) ("To give effect to [the prosecution bar], . . . the legal teams of both parties must wall themselves off from their clients to prevent the dissemination of legal advice on other matters that might be tainted by information gained from reviewing the opposing party's confidential information.").

Therefore, the Court finds that Defendants' litigation counsel violated the prosecution bar in the Protective Order when she assisted in the prosecution of the Children Patents. By the terms of the Protective Order, Plaintiff is entitled to sanctions in Rule 37(a).

### C. Appointment of Special Master is Not Warranted.

Plaintiff seeks as a sanction the appointment of a special master to supervise

Defendants' production of all emails relating to the CYMAX-disclosure fraud. ECF No. 331 at 21–28. Plaintiff argues that from the outset of this case Defendants have commingled litigation and prosecution and that a special master is needed to determine the extent of Defendants' violations of the prosecution bar. *Id.* at 21–22. Plaintiff also argues that discovery issues relating to CYMAX and the Court's prior rulings on the scope of the crime-fraud exception remain. *Id.* at 22–28. Defendants counter that a special master is unnecessary, and that Plaintiff is impermissibly seeking discovery into its litigation strategy with its request for a special master. ECF No. 349 at 24–27.

Under Rule 53, the Court may appoint a special master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." FED R. CIV. P. 53(a)(1)(C). "In appointing a master, the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay." FED R. CIV. P. 53(a)(3). Judge Ellison has referred all pending and future discovery motions to this Court for disposition in accordance with 28 U.S.C. § 636(b)(1)(A). Order, ECF No. 247. Since this Court can address the discovery concerns Plaintiff raises, the Court finds that the appointment of a special master is not warranted. Plaintiff is directed to raise any discovery concerns with the Court for review as soon as it is apparent that an agreement cannot be reached. If necessary, the Court will

conduct weekly status hearings to determine whether discovery is proceeding as it should.

### D. Determination of Award of Reasonable Expenses Must Wait to the End of the Case.

Plaintiff also seeks an award of $75,000 in attorneys' fees incurred in enforcing the Protective Order. ECF No. 331 at 28–29. Plaintiff argues that it incurred these expenses in enforcing the Protective Order, including drafting letters to Defendants regarding compliance with the Protective Order, meet-and-confers to discuss these letters, and drafting its motion for sanctions and reply brief. *Id.* at 29.

The Court finds that Plaintiff is entitled to recover its reasonable expenses, including fees, however, the determination of the amount is not appropriate at this time. The district judge before whom this matter is pending will grant Plaintiff an award of reasonable expenses at the conclusion of the case, at which time all such expenses and fees will be readily determinable.

## CONCLUSION

Accordingly, Plaintiff's motion for sanctions, ECF No. 331, is **GRANTED** as follows: Plaintiff shall be awarded its reasonable expenses and attorneys' fees at the conclusion of this case. Plaintiff is instructed to bring any further discovery issues to the Court's attention as soon as it is apparent that an agreement cannot be worked out between the parties. In addition, the Court **ORDERS** that Defendants' motion for leave to file a sur-reply, ECF No. 355, is **GRANTED**. Any relief not

expressly granted is denied.

    Signed at Houston, Texas, on August 14, 2022.

*Dena Palermo*

**Dena Hanovice Palermo**
**United States Magistrate Judge**