United States District Court
Southern District of Texas
**ENTERED**
September 09, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| GLOBAL TUBING, LLC, | § § § § § § § § § § § § § § | |
| *Plaintiff*, | | |
| | | Case No. 4:17-CV-3299 |
| v. | | |
| TENARIS COILED TUBES, LLC and TENARIES, S.A., | | |
| *Defendants*. | | |

## Order

This is a patent infringement dispute involving two patents for coiled tubing used in the oil and gas industry to conduct and service wellbore operations.[1] Pending before the Court are two of Global Tubing, LLC's ("Plaintiff") discovery motions regarding experts. Pl.'s Mots., ECF No. 391, 408.[2] On August 22, 2022, the Court held a hearing on the motions. Counsel requested and were permitted to file more extensive briefs addressing the issues raised.[3] The dispute is a product of the agreed scheduling order that set expert rebuttal report deadlines and the discovery cut off in

---

[1] The district judge before whom this case is pending referred all discovery motions for resolution pursuant to 28 U.S.C. § 636 (b)(1)(A).

[2] Defendants filed responses to Plaintiff's motions. ECF Nos. 400, 413.

[3] Both sides filed briefs in support of their positions. Defs.' Br., ECF No. 427; Pl.'s Br., ECF No. 428.

close proximity to the November 28, 2022 trial date. Sch. Order, ECF No. 359. The Court will address each motion in turn.

### I. THE GRANDCHILDREN PATENTS ARE NOT RELEVANT.

This Court previously found that Tenaris Coiled Tubes, LLC ("Tenaris") fraudulently withheld the CYMAX brochure from the PTO in prosecution of the '256 patent[4] and withheld portions of the brochure in prosecution of the Children patents and that the brochure was but-for material.[5] In the first motion, Plaintiff seeks to strike Tenaris' and Tenaris, S.A.'s (collectively, "Defendants") expert Robert Stoll's opinion[6] that the CYMAX brochure was not material based on the PTO's treatment of those materials in relation to the Grandchildren patents.[7] ECF No. 391. Plaintiff notes that Defendants' invalidity expert (Steven Tipton) now also incorporates this treatment of the CYMAX materials into his analysis. ECF No. 428

---

[4] Tenaris is the owner of U.S. Patent No. 9,803,256 (the "'256 patent"), U.S. Patent No. 10,378,074 (the "'074 patent"), and U.S. Patent No. 10,378,075 (the "'075 patent") (collectively the '074 and '075 patents are referred to as the "Children patents"). Plaintiff sued Defendants for, *inter alia*, declaratory judgment of inequitable conduct, non-infringement, and antitrust violations. Pl.'s 2d Am. Compl., ECF No. 80. Tenaris has counterclaimed for infringement. Def.'s Am. Ans. and Counterclaims, ECF No. 119. The '256 patent is no longer at issue in this case. Minute Entry Order, Aug. 5, 2022. The Children patents are the only patents at issue in this litigation.

[5] Memorandum Order, ECF No. 222 at 24, affirmed, Minute Entry Order, Aug. 25, 2021; Hr'g Tr. Aug. 25, 2021, ECF No. 273 at 92:5-8.

[6] Stoll Rept., ECF No. 429 at 3-10. On July 28, 2022, Defendants produced Robert Stoll's expert report containing his opinion that the United States Patent Trademark Office's ("PTO") treatment of Tenaris' U.S. Patent Application Nos. 16/538,326 and 16/538,407 (together, the "Grandchildren patents") "is strong evidence that CYMAX is not but-for material." *Id.* ¶ 294.

[7] The Grandchildren patents were never at issue in this litigation. ECF No. 428 at 6.

at 6.[8] Thus, Plaintiff modified its motion seeking only to allow its expert to address the Grandchildren patents to respond to Defendants' expert's opinion. *Id*. Defendants do not oppose Plaintiff supplementing its expert report. ECF No. 427 at 8.

The only patents at issue in this case are the Children patents. The Grandchildren patents are not at issue in this case and have not until the last couple of weeks been a part of any discovery. ECF No. 391 at 1-2; ECF No. 428 at 6. Without the parties showing what those claims involve and how they compare to the '256 patent and the Children patents, which would likely require reopening discovery, there is no basis to conclude that Tenaris' prosecution of the Grandchildren patents or the PTO's determinations regarding those patents are relevant to the issues in this dispute, particularly the materiality of the CYMAX brochure to the '256 patent or Children patents. FED. R. CIV. P. 26(b)(1); *see Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 358 (5th Cir. 1995) (affirming district court's exclusion of evidence with a "tenuous relationship" to the claims at issue).

Therefore, Plaintiff's motion to supplement its expert's report to respond to the CYMAX opinions of Defendants' expert is **DENIED**. Stoll and Tipton's expert opinions, to the extent they rely on the PTO's actions with respect to the Grandchildren patents, shall be **STRICKEN**. *United States v. Masat*, 948 F.2d 923,

---

[8] *See* Tipton Rept., ECF No. 428-6.

933 (5th Cir. 1991) (the court has "wide discretion in determining the relevance and materiality of evidence").

In addition, Plaintiff seeks an order compelling Defendants to produce all privileged communications relating to the CYMAX materials and prosecution of the Grandchildren patents on the basis that Tenaris' actions before the PTO amounted to a continuation of the fraud this Court previously found. ECF Nos. 391, 428 at 6-9. Defendants oppose the motion asserting that they fully disclosed the CYMAX materials to the PTO in connection with the prosecution of the Grandchildren patents so it cannot be a continuation of the fraud. ECF No. 427 at 14.

While the Court finds that Tenaris' failure to produce this Court's crime-fraud opinion to the PTO is astounding, the prosecution of the Grandchildren patents before the PTO is not before this Court and is therefore irrelevant.[9] Accordingly, Plaintiff's motion to compel production of Defendants' privileged documents regarding the prosecution of the Grandchildren patents is **DENIED**.

## II.  PLAINTIFF'S MAY RELY ON THEIR EXPERT'S REBUTTAL OPINION.

In the second motion, Plaintiff seeks to allow its expert Dr. Alexander Hudgins' rebuttal opinion that the accused product (Plaintiff's DURACOIL tubing) has less martensite than the patented product, proving a defense to infringement.

---

[9] The record is not sufficient to establish a continuing fraud, even if the patents were relevant.

ECF No. 408. Defendants oppose the motion, asserting that this defense represents a complete change of position that prejudices Defendants. ECF Nos. 413, 427 at 1. In support, Defendants argue that this position is contrary to Plaintiff's invalidity contentions, answers to Defendants' contention interrogatory and requests for production, and further the samples were never produced in discovery. ECF No. 427 at 10. Defendants argue that Plaintiff's expert report from Dr. Hudgins regarding the martensite composition of DURACOIL should be stricken because Plaintiff improperly failed to disclose its contention that DURACOIL's composition is less than 90% martensite.

Defendants point to Interrogatory No. 6 and RFP No. 58 in support of their argument that Plaintiff improperly failed to disclose its contention. Regarding Interrogatory No. 6, Defendants claim that Plaintiff's response to its contention interrogatory was misleading because it "expressly incorporate[d] its non-infringement contentions," which state that DURACOIL "does not comprise a mixture of tempered martensite and bainite," *i.e.*, DURACOIL was more than 90% martensite. *Id*. at 9. Defendants further argue that Plaintiff's response to RFP No. 58 that it would only produce documents "demonstrated that [Plaintiff] had no intention to rely on samples." *Id*. at 10.[10]

---

[10] Dr. Hudgins tested an "as-quenched" coil tubing sample in formulating his opinion. ECF No. 427 at 10.

Plaintiff responds that Interrogatory No. 6 did not obligate it to disclose its contention that DURACOIL is composed of less than ninety percent martensite. ECF No. 428 at 17. Interrogatory No. 6 was not a contention interrogatory, but rather, sought information related to Plaintiff's efforts to avoid infringement. *Id*. at 18. Although Plaintiff admits that it "fail[ed] to [] disavow" the preliminary noninfringement contentions expressly incorporated in its response to Interrogatory No. 6, it points out that those contentions were "mooted once Tenaris made claims of infringement." *Id*. Plaintiff further states that Defendants should not have been misled because information consistent with Dr. Hudgins' report was repeatedly disclosed. *Id.* at 18-19. Plaintiff also asserts that in response to RFP No. 58 it produced documents reflecting "attempts to find the martensite content of as-quenched DURACOIL samples, as well as difficulties with the analyses." *Id.* at 14. Finally, Plaintiff asserts that it produced a sample of as-quenched coil tubing that was identical to the sample Dr. Hudgins tested. *Id.* at 18.

The Court finds that Plaintiff's argument that its noninfringement contentions were mooted and therefore did not have to be updated is meritless given that Plaintiff continued to reference them in response to Interrogatory No. 6, keeping them relevant to the case. *See* ECF No. 428-23 at 43-45. Plaintiff should have removed that reference no later than when it supplemented to include Dr. Hudgins' opinion. At this point, Plaintiff has removed that reference from its most recent interrogatory

answers. *Id.* at 45-46; ECF No. 427-3 at 3-4.

Defendants' position that Plaintiff failed to meet its obligation to disclose its contention that DURACOIL's composition is less than 90% martensite is unsupported. A party "has a duty to supplement discovery responses only if the additional information has not otherwise been made known to the other parties during the discovery process." *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 84-85 (5th Cir. 1994); *see also* Fed. R. Civ. P. 26(e)(1)(A) ("if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.").

Here, it cannot be said that Plaintiff did not otherwise make known to Defendants that DURACOIL might have less than 90% martensite. In fact, Plaintiff repeatedly disclosed this information to Defendants. ECF No. 428 at 14 (Plaintiff "produced documents both about its selection of low-carbon steel and about its attempts to find the martensite content of as quenched DURACOIL samples, as well as difficulties with the analyses."), 18 (Plaintiff's "President testified that DURACOIL's microstructure is a mixture of martensite and bainite."), 19 (counsel and executives referenced the composition); *see* ECF No. 428-23 at 46 (Plaintiff's supplemental interrogatory answer identifying various disclosures to Defendants regarding the martensitic and bainitic microstructure of DURACOIL).

Furthermore, Defendants' reliance on *Asia Vital* is misplaced. In that case, unlike here, the defendant propounded a contention interrogatory "requesting the factual and legal bases for [plaintiff's] non-infringement contentions." *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1003 (N.D. Cal. 2019). The plaintiff in *Asia Vital* failed to disclose one of its non-infringement contentions in response to the contention interrogatory and only did so in its expert rebuttal report. *Id.* The court struck the new non-infringement theories on the basis that it impeded the patentee from obtaining discovery. *Id.* at 1003-05. In contrast, Defendants in this case did not propound a contention interrogatory, but instead asked Plaintiff to describe the efforts it took to avoid infringement of the '256 patent.[11] Plaintiff's incorporation of its contentions in its response to Interrogatory No. 6 and failure to delete them when they no longer applied did not convert Interrogatory No. 6 into a contention interrogatory. Because Defendants failed to propound a contention interrogatory, Plaintiff was not subject to the same obligations as the *Asia Vital* plaintiff. *Id.* (striking expert report because "[a] rule that an accused infringer may wait until its expert rebuttal report to set forth theories of non-infringement for the first time would forfeit the benefits of contention

---

[11] Interrogatory No. 6 stated: "For each claim of the '256 patent, describe in complete detail any effort taken by You to avoid infringement of the claim, including the development of any prototype, testing, experimentation, upcoming products, or other analysis." Pl.'s Supp. Resp. To Defs.' Interrog., ECF No. 428-23 at 43.

interrogatories.").

Therefore, subject to a ruling on any *Daubert* motion Defendants may file, Plaintiff's motion is **GRANTED** and it may rely on Dr. Hudgins' expert report. Plaintiff produced the sample in response to Defendants' RFP requiring the production of samples, which was heavily litigated before this Court.[12] Nonetheless, Plaintiff is **ORDERED** to make Dr. Hudgins available for deposition, and to provide Defendants with another as-quenched sample of the material Dr. Hudgins tested.

Accordingly, the Court **ORDERS** the following:

1. The amended expert report of Steven Tipton and rebuttal report of Robert Stoll are **STRICKEN** to the extent they refer to or rely on the PTO's treatment of the CYMAX materials regarding the prosecution of the Grandchildren patents.

2. Plaintiff's motion to supplement its expert report responding to Tipton's report or Stoll's report regarding the PTO's treatment of the CYMAX materials regarding the prosecution of the Grandchildren patents, ECF No. 391, is **DENIED.**

---

[12] *See* M&R, ECF No. 241 (regarding production of samples), affirmed, Minute Entry Order, Aug. 25, 2021; Hr'g Tr. Aug. 25, 2021, ECF No. 273 at 117:8-9. Defendants' experts have indicated that they do not need to test samples to arrive at their opinions, but may desire to test samples to respond to Dr. Hudgins' opinions.

3. Plaintiff's motion to rely on its expert Dr. Alex Hudgins' rebuttal report regarding the chemical composition of its DURACOIL, ECF No. 408, is **GRANTED**.

4. Plaintiff shall produce Dr. Hudgins for deposition and produce another sample of the as-quenched coil tubing he tested.

Signed at Houston, Texas, on September 9, 2022.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**