UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **GLOBAL TUBING LLC,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:17-CV-03299 |
| § | |
| **TENARIS COILED TUBES LLC,** *et al.*, § | |
| § | |
| **Defendants.** § | |

# ORDER

This case was brought by Plaintiff Global Tubing, LLC ("Global") seeking, among other things, declaratory judgment that it was not infringing on patents held by Tenaris Coiled Tubes, LLC. and Tenaris, S.A. (collectively, "Tenaris"). Tenaris has counterclaimed for infringement. This case has been pending more than five years.

The parties have, between them, filed eleven motions for summary judgment. In one such motion (ECF No. 446), Plaintiff asks that the Court hold that U.S. Patent No. 9,803,256 Patent ("'256 patent"), U.S. Patent No. 10,378,074 ("'074 patent"), and U.S. Patent No. 10,378,075 ("'075 patent") (collectively the '074 and '075 patents are the "Children Patents") are unenforceable because of Defendants' misconduct. The Court held a hearing on Plaintiff's Motion for Summary Judgment of Unenforceability of the Patents-in-Suit (ECF No. 446) and Defendants' Motion for Summary Judgment of No Inequitable Conduct on All Non-Inventorship Grounds (ECF No. 458) on November 15, 2022. At that hearing, the Court took the Motions under advisement. The Court now **GRANTS** Plaintiff's Motion for Summary Judgment of

1

Unenforceability of the Patents-in-Suit and provides this Memorandum & Order to document its rulings and reasoning.

## I. BACKGROUND

The factual background of the dispute and a description of the general subject matter of the patents are set forth in the Memorandum Order (ECF No. 222) issued by the Magistrate Judge, Honorable Dena Hanovice Palermo, on March 26, 2021 (the "March 2021 Order"). The extensive discussion in the March 2021 Order will not be repeated here, but is incorporated by reference. The March 2021 Order originated as a ruling on discovery issues. It included, however, a comprehensive discussion and analysis that anticipate the issues presented by Global's pending Motion for Summary Judgment (ECF No. 446). Still, in the March 2021 Order, Judge Palermo was careful to note that, "Since this is a discovery motion, and not a determination on the merits, the sole question is whether Plaintiff's evidence is sufficient to make a prima facie case of fraud. Defendant's evidence is insufficient to conclusively rebut Plaintiff's evidence, it simply evidences that there are issues of fact that will be resolved at trial." ECF No. 222 at 24.

Almost two years have passed since Judge Palermo's opinion. Defendants have not, however, come forward with evidence that introduces a genuine issue as to any material fact with respect to any of the issues before Judge Palermo.

## II. INEQUITABLE CONDUCT ASSERTIONS

The patents in question are for coiled tubing which is used in the oil and gas industry for downhole drilling. There is great value attached to having tubing that is durable, strong, and safe. A process known as "quench and temper" enhances these qualities in tubing. The first quench and temper tubing was produced by Southwestern Pipe, Inc. ("Southwestern") and was known as

CYMAX. ECF No. 446 at 13. In connection with its production, in the 1990s, Southwestern created and distributed to its customers a sales brochure. ECF No. 446-5 at 28:7-21. On page 30 of the brochure, the chemistry of the carbon content of CYMAX 100 is stated to be .13 - .17% wt. ECF No. 466 at 14. That carbon content overlaps with the carbon context in Tenaris's '256 patent for its BlueCoil coiled tubing of .17-.35 wt. ECF No. 133 at 10.

Southwestern's product was not a commercial success and Southwestern left the market for coiled tubing. In 2010, Tenaris discovered the CYMAX furnace in an old facility it owned. On February 26, 2014, Tenaris filed its application for the patent that subsequently issued as the '256 on October 31, 2017. *Id.* at 13. Soon after Tenaris filed its patent application, it obtained a copy of the CYMAX brochure. *Id.* The brochure was distributed to those at Tenaris working on the '256 patent. *Id.* One member of the Tenaris team wrote to the lead inventor, Martin Valdez, "look at the chemistries (Page 30 for instance for CYMAX 100). This is essentially our chemistry for H5590 (A606HS)." ECF No. 133 at 9; ECF No. 133-132 at 12. Valdez sent the brochure to Tenaris's in-house counsel, who forwarded it to outside patent prosecution counsel. No one provided the CYMAX brochure to the Patent and Trademark Office during the application for the '256 patent.

Plaintiff contends that Defendants' omission of the CYMAX brochure in its application for the '256 patent is a classic example of inequitable conduct. ECF No. 466 at 13. The parties do not dispute that inequitable conduct is an equitable defense to patent infringement that bars enforcement of a patent. Both parties rely heavily on the Federal Circuit's authoritative en banc decision in *Therasense, Inc. v. Becton, Dickenson & Co.*, 649 F. 3d 1276, 1285 (Fed. Cir. 2011)(en banc).

### III.    DISCUSSION

### A. Summary Judgment Standard

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.' " *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)). "[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718–19.

### B. The Standard for Inequitable Conduct and Infectiousness

Patent applicants have a duty to prosecute patent applications in the PTO with candor, good faith, and honesty. As a result, applicants are expected to disclose to the PTO information that they are aware of that would have a material impact on the examination of the application. *Li*

4

*Second Family Ltd. P'ship v. Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000). A breach of this duty, coupled with intent to deceive, constitutes inequitable conduct. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.Cir.1995). In determining whether inequitable conduct occurred, Global must demonstrate by clear and convincing evidence that Tenaris "(1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239, 1242 (Fed. Cir. 2013).

The question whether Defendants can justifiably be held to have committed inequitable conduct is the heart of the parties' competing motions for summary judgment. Plaintiff's Motion for Summary Judgment of Unenforceability of the Patents-in-Suit (ECF No. 446); and Defendants' Motion for Summary Judgment of No Inequitable Conduct on all Non-Inventorship Grounds (ECF No. 458). The consequences are significant: "Perhaps most importantly, the remedy for inequitable conduct is the 'atomic bomb' of patent law. Unlike validity defenses, which are claim specific, *see* 35 U.S.C. § 288, inequitable conduct regarding any single claim renders the entire patent unenforceable." *Therasense*, 649 F.3d at 1288.

Because inequitable conduct is the atomic bomb of patent law, the doctrine requires a showing of both intent and materiality. *Id* at 1289. In *Therasense*, the Federal Circuit said that it "now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290. "A district court should not use a sliding scale where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa." *Id.*

The Federal Circuit reviews a trial court's finding of inequitable conduct in a two-prong process: (1) analyzing the "underlying factual determinations of materiality and intent for clear error" and (2) reviewing the "ultimate decision as to inequitable conduct for an abuse of discretion." *1st Media, LLC v. Electronic Arts, Inc.*, 694 F. 3d 1367, 1372 (Fed. Cir. 2012). Information is material to patentability when

> it is not cumulative to information already of record or being made of record in the application, and
>
> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
> (2) It refutes, or is inconsistent with, a position the applicant takes in:
> a. Opposing an argument of unpatentability relied on by the Office, or
> b. Asserting an argument of patentability.

37 C.F.R. § 1.56(b) (2005).

Additionally, to satisfy the clear and convincing evidence standard for the intent prong, the specific intent to deceive must be "the single most reasonable inference able to draw from the evidence." *Therasense*, 649 F.3d at 1290. If there are multiple conclusions that can be drawn from the evidence, intent to deceive cannot be found. *Id.* at 1293-93. "Unlike other deficiencies, inequitable conduct cannot be cured by reissue or reexamination. Moreover, the taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family. Thus, a finding of inequitable conduct may endanger a substantial portion of a company's patent portfolio." *Id.* at 1288.

For inequitable conduct related to a parent patent to render a child patent unenforceable, the inequitable conduct at issue needs to have an "immediate and necessary relation" to the children patents. *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 810 (Fed. Cir. 1990). Courts that have found infectious unenforceability at issue have "made no mention of any direct

linkage between (1) the inequitable conduct that occurred during prosecution of the infectious patent and (2) what happened during the prosecution of the patent(s)-at-issue." *Guardant Health Inc. v. Foundation Med. Inc.*, 2020 WL 2477522, at *4 (D. Del. Jan. 7, 2020).

### C. '256 Patent

With these principles in mind, the Court turns to the evidence in this case. As to materiality, there can be little doubt that the CYMAX brochure satisfies even the strictest criteria. The brochure was correctly recognized by one of the inventors of what became the '256 patent as containing "essentially our chemistry." ECF No. 133 at 9. Tenaris argues that the omission of the CYMAX brochure was of no matter because the brochure discloses the same claim limitations as another reference, called Chitwood. But Tenaris fails to identify any part of the Chitwood that includes the precise chemical specification that the CYMAX brochure included at page 30. Moreover, Tenaris subsequently submitted the CYMAX brochure – with page 30 omitted – in support of its applications for the children patents which it would not have done if the brochure was not material.

The Court's conclusion as to inequitable conduct is strengthened by the untenable rationale Tenaris offers in explanation of non-disclosure. For instance, Tenaris claims that the CYMAX documents were confidential without any evidence to support its theory. ECF No. 499 at 17. Tenaris's argument also ignores the fact that the PTO regularly deals with confidential materials on inequitable conduct. The same could be said with respect to Tenaris's suggestions that the submission of the CYMAX brochure would cause unnecessary complications.

Just as the evidence amply demonstrates the materiality criteria of the doctrine of inequitable conduct, so too does the evidence establish intent. After the PTO rejected the application for the '256 patent on obviousness grounds, it asked for an affidavit supporting

7

Tenaris's position on non-obviousness. Tenaris overcame the rejection with a declaration from Valdez. In preparation for his declaration, Valdez wrote to prosecuting counsel about the CYMAX brochure stating, "In page 30 of the CYMAX.pdf doc you can see the spec of the CYMAX 100 which was 0.13 - 0.17 Carbon. I am not sure it is a good idea to disclose this document." ECF No. 446 at 14. After Valdez expressed this concern, the prosecuting attorney did not submit the CYMAX brochure to the examiner. Rarely do courts come across such stark evidence of the intent fork of inequitable conduct. *GFI, Inc. v. Franklin Corp.* 265 F.3d 1268, 1274 (Fed Cir. 2001) ("facts in inequitable conduct cases rarely include direct evidence of admitted deceitful conduct").

Moreover, there is no other reasonable inference that can be drawn from Tenaris's withholding the CYMAX document from the Patent Office, other than intent to deceive. Tenaris alleges that Valdez's intent is a material dispute of fact with regards to the comment he made to the prosecuting attorney. Tenaris argues that the actual intent of the question was whether the information "would be relevant as evidence of failure of others." ECF No. 499 at 22. However, this does not present an equally reasonable inference to Global's intent to deceive argument. Tenaris also argues that Global should not now be able to advance arguments that are in some degree inconsistent with assertions in Global's invalidity contention. But, Tenaris cites no authority suggesting that invalidity contentions estop a party from later taking a different position. Such a rule would be especially nonsensical in a case in which so much has been revealed in discovery.

For the above reasons, the Court finds Tenaris's actions constituted inequitable conduct, rendering the '256 Patent unenforceable.

### D.  '074 and '075 Children Patents

The Court's finding of inequitable conduct can affect not just the '256 patent, but also the '074 and '075 children patents. Global argues that the immediate and necessary relation between the '256 patent and the '074 and '075 children patents can be established by "showing that the patentee filed a terminal disclaimer in the later applications, to surmount a double-patenting rejection over the earlier, infectious patent." ECF No. 446 at 27. Tenaris rejects Global's argument on the grounds that terminal disclaimers alone "[do] not bind the enforceability of the '074 and '075 patents to the alleged inequitable conduct during the prosecution of the '256 patent." ECF No. 499 at 33. However, the Court finds that the patents are related by more than just the patentee's terminal disclaimer.

Just as Judge Palermo found fraud in the prosecution of the '256 patent, she found that Tenaris's fraud continued through its prosecution of the '074 and '075 patents. In prosecuting the children patents, Defendants did not submit the CYMAX material as it had been originally maintained nor did they provide pages detailing the steel chemistry to the PTO. Moreover, Defendants changed the inventors so that available prior art were no longer considered, as the prior art had previously rendered the patents obvious. In addition to the terminal disclaimers, these acts clearly show the relation between the '256 patent and the '074 and '075 children patents.

For the above reasons, the Court finds that Tenaris's misconduct was infectious, rendering the children of the '256 Patent, '074 and '075 Patents, unenforceable.

### E. Affirmative Egregious Misconduct

The Court does not reach the affirmative egregious misconduct arguments as they are mooted by the Court's finding of but-for materiality.

### F. Liability

The Court wishes to emphasize that none of the counsel who have participated in the argument of the subject motion before this Court is implicated in any of the inequitable conduct discussed.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Global Tubing's Motion for Summary Judgment of Unenforceability of the Patents-in-Suit is **GRANTED**. All other motions are **DISMISSED** without prejudice. The parties may refile to address any remaining issues.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 17th day of March, 2023.

Keith P. Ellison
United States District Judge